UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DALVIN BELTRAN,

                              Petitioner,                    12 Civ. 1442 (NSR) (PED)

         - against -                                         **REPORT AND
                                                             RECOMMENDATION**

THE ATTORNEY GENERAL OF
THE STATE OF NEW YORK,

                              Respondent.

TO THE HONORABLE NELSON STEPHEN ROMÁN, United States District Judge:

## I. INTRODUCTION

On October 4, 2008, after drinking brandy at a friend's home, petitioner Dalvin Beltran ("petitioner" or "defendant") fatally stabbed Ismael Hernandez in the abdomen. On November 12, 2008, a Sullivan County grand jury charged petitioner with second degree murder (N.Y. Penal Law § 125.25(1)) and third degree criminal possession of a weapon (N.Y. Penal Law § 265.02(1). On April 21, 2009, petitioner pled guilty to one count of first degree manslaughter (N.Y. Penal Law § 125.20). He was sentenced on July 14, 2009, in accordance with his plea agreement, to a determinate term of imprisonment of ten years with five years post-release supervision. Petitioner is currently incarcerated at Washington Correctional Facility in Comstock, New York.

Presently before this Court is petitioner's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. This petition is before me pursuant to an Order of Reference dated April 5, 2012 (Dkt. #7). For the reasons set forth below, I respectfully recommend that Your Honor deny the petition in its entirety.

## II. BACKGROUND[1]

### A.  Jury Selection

Jury selection was held and completed on April 20, 2009.  After twelve jurors were selected, an insufficient number of potential jurors remained from which to select two alternate jurors.  At the trial court's suggestion, the People and defense counsel agreed to select the alternate jurors from those prospective jurors who had been peremptorily challenged.  Juror Kelly (who had been challenged by defendant) and Juror Goldstein (peremptorily challenged by the prosecution) were selected as alternates.

### B.  Plea Proceeding

At the conclusion of opening statements on April 21, 2009, the prosecution and defense counsel informed the court that they had reached a plea agreement.  The People agreed to reduce Count One to first degree manslaughter in exchange for petitioner's plea of guilty to that count and his waiver of right to appeal, if the court agreed to impose a sentence of ten years imprisonment followed by five years post-release supervision.  See Resp. Decl., Exh. A, at A17.[2] Defense counsel stated that he had discussed the plea offer with petitioner and his family, and they all agreed it was the best option under the circumstances.  See id. at A18.  The trial court agreed:

> All right.  Well, based upon the representations and the Court's knowledge of this

---

[1]  Unless otherwise indicated, the information within this section is gleaned from the instant petition ("Pet.") (Dkt. #1), respondent's Declaration in Opposition to the Petition for a Writ of Habeas Corpus ("Resp. Decl.") (Dkt. #9), respondent's Memorandum of Law in Opposition to the Petitioner for a Writ of Habeas Corpus ("Resp. Opp.") (Dkt. #9) and petitioner's Affidavit in Reply to Opposition for Petitioner for Writ of Habeas Corpus ("Reply") (Dkt. # 11).

[2]  Hereinafter, all citations to "Exh. ___" refer to exhibits attached to respondent's Declaration in Opposition.

case through the pretrial hearings, it seemed to be that alcohol was a substantial factor and there was alcohol abuse in this situation, which would make murky the defendant's intent to kill his – one of his friends. . . . The Court will go along with the ten years plus five years of post release supervision along with the waiver of appeal. This will bring closure to this matter and both families.

Id. Petitioner was placed under oath and allocuted, in pertinent part, at follows (id. at A19-A26):

THE COURT: Okay. Are you under the influence this morning of any drugs, medication, substance that would affect your ability to think clearly and straightly here this morning?

THE DEFENDANT: No, your Honor.

THE COURT: Did you understand the statements made by the attorneys with respect to you waiving your jury trial which we've commenced already and entering a plea of guilty to Manslaughter as a felony charge?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand the sentence will be ten years with five years of post release supervision?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you also understand that by pleading guilty, this will result in a felony conviction, so that if you commit any felony in the future, [you would] be mandatorily sentenced to states prison as a convicted second felony offender in the future? You understand that is this?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now, the attorneys have also mentioned to me the waiver of appeal, and that's part of this plea bargain and that you're giving up your rights to appeal your sentence, your conviction, any pretrial hearings and decisions in this matter. Is that your understanding?

THE DEFENDANT: Yes, your Honor.

THE COURT: And will you – have you signed the written waiver of appeal yet?
        Record will reflect the defendant is signing the waiver of appeal here in open court I the presence of his attorneys, Mr. Schick and Mr. Sherman, at this time.
        Court will accept the written waiver of appeal.[3]
        Mr. Beltran, is anyone forcing, threatening or coercing you in any way into giving

---

[3] The written waiver signed by petitioner during his plea allocution appears in the record within Exh. B, at R66-R67.

-3-

up your rights to appeal or your rights to continue this jury trial?

THE DEFENDANT: No, your Honor.

THE COURT: Do you understand that by giving up your right to a jury trial, this will be the end of the case, there won't be another trial or anything like that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. Then how do you plead to Count 1 reduced to Manslaughter in the First Degree, a Class –

MR. FARRELL: B.

THE COURT: – B felony, violent B felony, guilty or not guilty?

THE DEFENDANT: Guilty, your Honor.

THE COURT: So, on October 4, 2008, at approximately 12:55 in the morning, were you at 37 Orchard Street in the Village of Liberty?

THE DEFENDANT: Yes, your Honor.

THE COURT: And whose residence or apartment is 37 Orchard Street?

THE DEFENDANT: It belongs to Ismael and Migdalia Colon.

THE COURT: Okay. And you know – you know Ismael Hernandez, is that correct?

THE DEFENDANT: Yes, your Honor. He was a friend.

THE COURT: And had you been drinking that day?

THE DEFENDANT: Yes, your Honor.

THE COURT: And what were you drinking?

THE DEFENDANT: Brandy.

THE COURT: Brandy. Okay. And do you know if Ismael was drinking that day?

THE DEFENDANT: He drinks every day.

THE COURT: Okay. Well, and at that – on that day and that morning hours, did you have a knife, a dagger with you?

-4-

THE DEFENDANT: Yes, I did, your Honor.

THE COURT: What did it have, like a ten-inch blade?

THE DEFENDANT: About nine-inch blade.

THE COURT: And where did you get it from?

THE DEFENDANT: I found it in my basement.

THE COURT: M-m h-m-m, but you had it with you that – that morning, is that correct?

THE DEFENDANT: Yes, your Honor.

THE COURT: And did you recklessly stab Mr. Hernandez in the abdomen with that knife with that nine- or ten-inch blade?

THE DEFENDANT: Yes, your Honor.

THE COURT: And did that cause his death?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay, Mr. Farrell, is there anything else?

MR. FARRELL: Judge, I think he – we don't really need an allocution since it is a reduction but it would be an intent to cause serious injury, not death.

THE COURT: You stabbed him with intent to at least cause serious physical injury to him?

THE DEFENDANT: Yes, your Honor.

. . .

THE COURT: Now, Mr. Beltran, the sentencing will be about 12 weeks from now. . . . Please cooperate with the Probation Department, please continue to express the remorse, continue to accept responsibility for causing the death of your friend and I will give you my word that I'll give you the 10-year sentence.  If, however, you get in trouble, if you break the law or if you take a position with Probation different from your position here today, then we won't get ten years, you're going to wind up getting 20 years.  Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay.  See you then on – see you then in July.

MR FARRELL: We did mention five years post release?

THE COURT: Five years post-release supervision?

MR. FARRELL: Right.

THE COURT: In addition to the ten-year sentence as required by law.

**C.**   **Sentencing and Execution of Waiver of Right to Appeal**

At the July 14, 2009 sentencing, the prosecution noted for the record that petitioner's counsel reviewed the written Waiver of Appeal with petitioner and both of them signed it in open court.  Id. at A32.  The executed waiver stated, in relevant part, as follows:

> I, the undersigned defendant, in consideration of and as part of the favorable plea and sentencing agreement being entered into, hereby acknowledge that I have been advised of, and waive, all of the rights below.
> I acknowledge that I have been advised of, and waive, my right to appeal from the judgment of conviction or sentence.  This includes, but is not limited to, my right to prosecute the appeal as a poor person and to have an attorney assigned in the event that I am indigent, and to submit a brief and/or have argument before the appellate court on any issues related to the conviction and sentence.
> This waiver applies to all issues that may validly be waived.  This includes, but is not limited to, any issue regarding the effectiveness of counsel prior to my plea in this case and any issue that may arise with regard to the imposition of sentence. . . .
>                 . . .
>
> I waive all these rights voluntarily, knowingly and intelligently and without coercion by anyone, after being duly informed of them by my attorney standing beside me.  I have had a full opportunity to discuss these matters with my attorney and to raise them with the court, and any questions I may have have been answered to my satisfaction.  I am waiving my right to appeal to mark the end of my case.

Exh. B at R68-R69.  The trial court signed the waiver, after which petitioner acknowledged on the record that he had not been forced, threatened or coerced into giving up his right to appeal, that he had signed the waiver in open court that morning and that he understood the waiver terms.  See Exh. A at A33.  The court then imposed the agreed-upon sentence.

**D.**     **Direct Appeal**

On or about March 29, 2010, petitioner (by and through counsel) timely appealed his conviction to the New York State Appellate Division, Third Department on the following grounds: (1) the court erroneously allowed counsel to select alternate jurors from a group of potential jurors who had been peremptorily challenged; (2) trial counsel was ineffective because he accepted an alternate juror that he had previously excluded via peremptory challenge; (3) the trial court's jury selection procedures violated New York State Criminal Procedure law; and (4) "it cannot be said beyond a reasonable doubt that the wrongful procedure, singly or cumulatively did not affect the defendant's decision to plead rather than proceed with the trial." See Exh. A at 2-5.  Respondent opposed on or about May 3, 2010.  See Exh. D.  On or about August 9, 2010, petitioner submitted a supplemental *pro se* brief in support of his direct appeal wherein he asserted that trial counsel was ineffective because he (1) failed to investigate and pursue an intoxication defense, (2) failed to procure an expert to testify that petitioner's ingestion of the combination of alcohol and prescription anti-psychotic medications would negate the element of intent and (3) failed to explain to petitioner that he had a viable intoxication defense prior to advising him to plead guilty to an intentional, rather than a reckless, crime.  See Exh. C.

By Memorandum and Order dated December 30, 2010, the Third Department affirmed petitioner's conviction.  See Exh. E.  With regard to petitioner's ineffective assistance claim, the Appellate Division noted that the claim survived petitioner's waiver of appeal "to the extent that it implicate[d] the voluntariness of his guilty plea" but held it was "unpreserved" due to petitioner's "failure to move to withdraw his plea or vacate the judgment of conviction." Id. at 2

-7-

(citations omitted).[4]  The Third Department further held:  "In any event, defense counsel raised an intoxication defense that contributed to the plea agreement reached and, given defendant's admissions during the plea colloquy, we are satisfied that he received meaningful representation."  Id. (citations omitted).

On or about January 31, 2011, petitioner's appellate counsel submitted a letter requesting leave to appeal to the New York Court of Appeals.  See Exh. F.  Although counsel enclosed copies of the Third Department's decision and the various briefs that had been submitted on direct appeal, his letter focused solely on the jury selection issue and mentioned none of the issues petitioner raised in his supplemental brief.  See id.  On March 28, 2011, the Court of Appeals denied petitioner's request for leave to appeal.  See Exh. H.

**E.      The State Court Collateral Proceedings**

On or about October 10, 2010, while his direct appeal to the Third Department was pending, petitioner filed a *pro se* motion to vacate his judgment of conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10,[5] on the ground of ineffective assistance of trial counsel premised on the same arguments he raised in his supplemental brief on direct appeal.  See Exh. I.  In opposition, respondent argued (1) petitioner waived his rights to file a 440.10 motion and to bring any post-conviction application on the ground of ineffective assistance of counsel and (2) petitioner raised the same arguments in his pending direct appeal and, because

---

[4]  The Third Department was mistaken:  petitioner had filed a motion to vacate which was pending before the trial court at the time of the Third Department's decision.  See Exh. I and discussion *infra*.

[5]  "At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment . . . ."  N.Y. Crim. Proc. Law § 440.10(1).

-8-

sufficient facts appeared on the record for the ineffective assistance claim to be reviewed on direct appeal, petitioner's motion should be denied pursuant to CPL § 440.10(2)(b).[6]  See Exh. J at ¶¶ 10–43.  Respondent alternatively argued that petitioner's claim was without merit.  See id. at ¶¶ 44–60.  Petitioner submitted a reply affidavit in which he argued, *inter alia*, (1) his ineffective assistance of counsel claim survived his waiver of appeal because it implicated the voluntariness of his guilty plea and (2) he properly asserted his ineffective assistance of counsel claim in a CPL § 440.10 motion because it is premised on matters both on and off the record. See Exh. K at 2-3.

By Decision and Order dated March 14, 2011, the trial court (LaBuda, J.) denied petitioner's motion to vacate "[b]ased upon defendant's waiver of further motions and based upon his appeal."  See Exh. L.  On or about March 30, 2011, petitioner sought leave to appeal the trial court's denial of his 440.10 motion to vacate.  See Exh. M.  The Third Department denied petitioner's request on May 18, 2011.  See Exh. O.

**F.    The Instant Habeas Petition**

Petitioner timely[7] filed the instant Petition for a Writ of Habeas Corpus on or about February 16, 2012,[8] wherein he seeks habeas review of the claim he raised in his supplemental brief to the Third Department and in his motion to vacate, *to wit*:  trial counsel was ineffective

---

[6] "[T]he court must deny a motion to vacate a judgment when . . . [t]he judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon . . . appeal."  N.Y. Crim. Proc. Law § 440.10(2)(b).

[7] See 28 U.S.C. § 2244(d)(1).

[8] The date on which petitioner placed the instant Petition in the prison mailing system. See Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001) (extending the "mailbox rule," Houston v. Lack, 487 U.S. 266 (1988), to *pro se* petitions for habeas relief).

because he (1) failed to investigate and pursue an intoxication defense, (2) failed to procure an expert to testify that petitioner's ingestion of the combination of alcohol and prescription anti-psychotic medications would negate the element of intent and (3) failed to explain to petitioner that he had a viable intoxication defense prior to advising him to plead guilty to an intentional, rather than a reckless, crime.

### III.  DISCUSSION

**A.      Applicable Law**

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254.  If there has been procedural compliance with these statutes, the court must then determine the appropriate standard of review applicable to the petitioner's claim(s) in accordance with  § 2254(d).  The procedural and substantive standards applicable to habeas review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), are summarized below.

1. *Timeliness*

AEDPA established a one-year statute of limitations for the filing of a habeas corpus petition seeking relief from a state court conviction.  See 28 U.S.C. § 2244(d)(1).  The one-year limitation period runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

AEDPA's statute of limitations is tolled during the pendency of a properly filed application for state post-conviction relief, or other collateral review, of a claim raised in the petition. See id. § 2244(d)(2). The one-year limitation period is also subject to equitable tolling, which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 130 S. Ct. 2549, 2562 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). In the Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation marks omitted), which have "prevented [the petitioner] from filing his petition on time," Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (internal quotation marks and emphasis omitted). The applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Id.

2. *Exhaustion*

A federal court may not grant habeas relief unless the petitioner has first exhausted his claims in state court.  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(I) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2254© (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented").  The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claims.  Rose v. Lundy, 455 U.S. 509, 518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted).  "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims."  Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)).  Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition."  Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted).  The Second

Circuit has delineated a number of ways in which a petitioner may fairly apprise the state court of the constitutional nature of his claim, even without citing chapter and verse of the Constitution, including: "a) reliance on pertinent federal cases employing constitutional analysis, b) reliance on state cases employing constitutional analysis in like fact situations, c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011) (internal quotation marks and citation omitted). A habeas petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991). Such a procedurally barred claim may be deemed exhausted by a federal habeas court. See, e.g., Reyes, 118 F.3d at 139. However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." Rhines v. Weber, 544 U.S. 269, 277

-13-

(2005); see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Padilla v. Keane, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

    3.  *Procedural Default*

    Federal habeas corpus review of a state court's denial of a state prisoner's federal constitutional claim is barred if the state court's decision rests on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional violation, or show "that failure to consider the claims will result in a fundamental miscarriage of justice."  See Coleman v. Thompson, 501 U.S. 722, 750 (1991).  See also Lee v. Kemna, 534 U.S. 362, 375 (2002); Dunham v. Travis, 313 F.3d 724, 729 (2d Cir. 2002).  A procedural ground is "independent" if "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar."  See Harris, 489 U.S. at 263 (internal quotation marks omitted).  A procedural bar is "adequate" if it is "based on a rule that is firmly established and regularly followed by the state in question."  Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (internal quotation and citation omitted).

    In certain limited circumstances, however, "even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule in a particular case is 'exorbitant.'"  See Garvey v. Duncan, 485 F.3d 709, 713-14 (2d Cir. 2007) (citing Lee, 534 U.S. at 376).  The Second Circuit has set forth the following "guideposts" for evaluating the adequacy of the state procedural bar in the context of "the specific circumstances

presented in the case, an inquiry that includes an evaluation of the asserted state interest in

applying the procedural rule in such circumstances":

> (1) whether the alleged procedural violation was actually relied on in the trial
> court, and whether perfect compliance with the state rule would have changed the
> trial court's decision; (2) whether state caselaw indicated that compliance with the
> rule was demanded in the specific circumstances presented; and (3) whether
> petitioner had "substantially complied" with the rule given "the realities of trial,"
> and, therefore, whether demanding perfect compliance with the rule would serve
> a legitimate governmental interest.

Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (quoting Lee, 534 U.S. at 381-85).

### 4. *Standard of Review*

"[I]t is not the province of a federal habeas court to reexamine state-court determinations

on state-law questions.  In conducting habeas review, a federal court is limited to deciding

whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v.

McGuire, 502 U.S. 62, 68 (1991).  See 28 U.S.C. § 2254(a).  When reviewing petitions filed

subsequent to AEDPA's effective date, a federal court may not grant habeas relief unless the

petitioner establishes that the state court's decision "was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the

United States" or "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (d)(2).  The AEDPA

deferential standard of review will be triggered if the petitioner's claim "was adjudicated on the

merits in State court proceedings."  28 U.S.C. § 2254(d); see Bell v. Miller, 500 F.3d 149,

154–55 (2d Cir. 2007).  "For the purposes of AEDPA deference, a state court 'adjudicate[s]' a

state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and

(2) reduces its disposition to judgment."  Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

A state court's decision is "contrary to" clearly established Federal law if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that reached by the Supreme Court of the United States]." Williams v. Taylor, 529 U.S. 362, 405 (2000). As to the "unreasonable application" prong, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A state court decision involves an "unreasonable application" of Federal Supreme Court precedent if (1) "the state court identifies the correct legal rule from [Federal Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or (2) "the state court either unreasonably extends a legal principle from [Federal Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407. However, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (citation omitted). In other words, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

Finally, under AEDPA, the factual findings of state courts are presumed to be correct. See 28 U.S.C. §2254(e)(1); see also Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997). The

petitioner must rebut this presumption by "clear and convincing evidence."  28 U.S.C.

§2254(e)(1).

**B.**     **Analysis of Petitioner's Claim of Ineffective Assistance**

    1. *Procedural Bar*

      Petitioner seeks habeas relief on the ground that his trial counsel was ineffective because

he (1) failed to investigate and pursue an intoxication defense, (2) failed to procure an expert to

testify that petitioner's ingestion of the combination of alcohol and prescription anti-psychotic

medications would negate the element of intent and (3) failed to explain to petitioner that he had

a viable intoxication defense prior to advising him to plead guilty to an intentional, rather than a

reckless, crime.  As discussed above, petitioner initially presented his claim of ineffective

assistance of trial counsel in his *pro se* supplemental brief to the Third Department.  The

Appellate Division held that petitioner's ineffective assistance claim was unpreserved and,

alternatively, rejected the claim on the merits.  Although petitioner (through counsel) sought

leave to appeal to the New York Court of Appeals, he only sought review of the Third

Department's denial of his jury selection claim.  Thus, petitioner failed to exhaust his ineffective

assistance claim on direct appeal.  However, while his direct appeal was pending, petitioner

asserted his ineffective assistance of counsel claim as the basis for his CPL 440.10 motion to

vacate.  As discussed above, the trial court denied petitioner's motion to vacate "[b]ased upon

defendant's waiver of further motions and based upon his appeal."  See Exh. L.  The Third

Department denied petitioner's request for leave to appeal the trial court's decision.

Consequently, the last reasoned state court decision to consider petitioner's ineffective assistance

of counsel claim is the trial court's decision denying petitioner's CPL 440.10 motion.

The trial court expressly denied petitioner's 440.10 motion on two distinct state procedural grounds: (1) petitioner's waiver of his right to file further motions and (2) "based upon his appeal." As to the second procedural bar, it is apparent that the trial court adopted respondent's argument in opposition to the 440.10 motion and, accordingly, denied petitioner's motion pursuant to CPL § 440.10(2)(b). Because the trial court's decision satisfies the requirement of independence, I must examine the adequacy of the two procedural bars in question.

  *a. Waiver*

Generally, a state court's denial of a claim based upon a defendant's affirmative waiver of his right to appeal may provide an independent and adequate state procedural bar upon which to deny habeas relief. See Haynes v. New York, No. 10-CV-5867, 2012 WL 6675121, at *8 (E.D.N.Y. Dec. 21, 2012).[9] Under New York law, however, claims of ineffective assistance of trial counsel which implicate the voluntariness of a defendant's guilty plea are exempt from that general bar. See id. "To survive the waiver, according to the New York courts, the claim of ineffective assistance must directly pertain to the defendant's decision to plead guilty–in other words, the claim must 'go to the very heart of the process.'" Cross v. Perez, 823 F. Supp.2d 142, 153 (E.D.N.Y. 2011) (quoting People v. Parilla, 8 N.Y.3d 654, 659, 870 N.E.2d 142, 838 N.Y.S.2d 824 (2007)).

Here, on direct appeal, the Third Department invoked this exception and held that petitioner's ineffective assistance claim survived his waiver of appeal "to the extent that it implicate[d] the voluntariness of his guilty plea." Exh. E at 2. The trial court, however, denied

_____

  [9] Copies of all unpublished opinions and decisions available only in electronic form cited herein have been mailed to petitioner. See Lebron v. Sanders, 557 F.3d 76, 78 (2d Cir. 2009).

petitioner's 440.10 motion without regard to the waiver exception. Instead, the trial court summarily held petitioner's ineffective assistance claim procedurally barred due to his "waiver of further motions." The trial court's reliance on petitioner's affirmative waiver as grounds to deny his ineffective assistance claim constitutes an "adequate" state procedural bar only if it is "based on a rule that is firmly established and regularly followed by the state in question." Monroe, 433 F.3d at 241 (internal quotation and citation omitted). Additionally, pursuant to the second *Cotto* guidepost, I must assess whether New York state case law demands application of the procedural bar "in the specific circumstances presented." Cotto, 331 F.3d at 240. In light of the Court of Appeals' decision in *Parilla* and the Third Department's decision in the instant case, I conclude that petitioner's waiver of appeal was not an "adequate" basis for the trial court's denial of his ineffective assistance claim.

   b. *CPL 440.10(2)(b)*

   The trial court also denied petitioner's 440.10 motion pursuant to CPL § 440.10(2)(b), apparently concluding that sufficient facts appeared on the record for petitioner's ineffective assistance claim to be reviewed on his pending direct appeal. New York case law suggests, however, that the trial court's reliance on CPL § 440.10(2)(b) was not warranted under the specific circumstances presented. See Cotto, 331 F.3d at 240. The New York Court of Appeals has stated that, "[g]enerally, the ineffectiveness of counsel is not demonstrable on the main record," and, therefore, "in the typical case it would be better, and in some cases essential, that an appellate attack on the effectiveness of counsel be bottomed on an evidentiary exploration by collateral or postconviction proceeding brought under CPL 440.10." People v. Brown, 45 N.Y.2d 852, 853-54, 382 N.E.2d 1149-50, 410 N.Y.S.2d 287 (1978). While some ineffective

-19-

assistance claims may appear on the record and therefore be more properly considered on direct appeal, see, e.g., Sweet v. Bennett, 353 F.3d 135, 139–40 (2d Cir. 2003), "mixed claim[s] of ineffective assistance that depend[ ], in part, upon matters that do not appear on the record" are not "procedurally barred" by New York Criminal Procedure Law § 440.10(2)(b), and the "440.10 proceeding is the appropriate forum for reviewing [such claims] in [their] entirety." People v. Maxwell, 89 A.D.3d 1108, 1109, 933 N.Y.S.2d 386, 388 (2d Dep't 2011); accord People v. Freeman, 93 A.D.3d 805, 806, 940 N.Y.S.2d 314, 315 (2d Dep't 2012) (finding that, because defendant's "mixed claim" of ineffective assistance of counsel "cannot be resolved without reference to matter outside the record, a CPL 440.10 proceeding is the appropriate forum for reviewing the ineffective assistance claim in its entirety") (internal quotation marks omitted).

Here, petitioner presented a mixed claim of ineffective assistance in his 440.10 motion because his claim rested on matters which appear on the record (failure to pursue an intoxication defense) and outside the record (failure to investigate, failure to procure an expert and failure to explain that petitioner had a viable intoxication defense prior to advising him to plead guilty). Accordingly, "compliance with" CPL § 440.10(2)(b) was not "demanded in the specific circumstances presented," Cotto, 331 F.3d at 240, because "sufficient facts" did not "appear on the record . . . to permit adequate review" upon direct appeal. N.Y. Crim. Proc. Law § 440.10(2)(b). The trial court's reliance on this rule, therefore, is not an "adequate" procedural bar.

Based on the foregoing, I conclude that the trial court's procedure-based rejection of petitioner's ineffective assistance claim was not adequate to preclude federal habeas review on the merits. Accordingly, I will review *de novo* the merits of petitioner's ineffective assistance

-20-

claim. See Santana v. Brown, No. 09 Civ. 5176,  2013 WL 2641460, at *6 (S.D.N.Y. June 12,

2013) ("Where this Court reaches the merits of a claim that has not been decided by the state

court on substantive grounds . . . the pre-AEDPA de novo standard of review applies.").

    2. *Merits*

In order to establish his claim of ineffective assistance of trial counsel, petitioner must

demonstrate (1) that his attorney's performance "fell below an objective standard of

reasonableness" and (2) that there is a "reasonable probability" that, but for counsel's error, "the

result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668,

694 (1984).  "The *Strickland* standard is rigorous, and the great majority of habeas petitions that

allege constitutionally ineffective counsel founder on that standard." Lindstadt v. Keane, 239

F.3d 191, 199 (2d Cir. 2001).  In considering whether counsel's performance was deficient under

*Strickland*'s first prong, "counsel is strongly presumed to have rendered adequate assistance and

made all significant decisions in the exercise of reasonable professional judgment." Greiner v.

Wells, 417 F.3d 305, 319 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 690).  The second

prong focuses on prejudice to the petitioner.  In order to satisfy the "prejudice" prong in the

context of a guilty plea, a habeas petitioner must demonstrate "a reasonable probability that, but

for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

Missouri v. Frye, 132 S. Ct. 1399, 1409 (2012) (quoting Hill v. Lockhart, 474 U.S. 52, 59,

(1985)).  A habeas petitioner bears the burden of establishing *both* deficient performance and

prejudice.  See Greiner, 417 F.3d at 319.  Thus, "there is no reason for a court deciding an

ineffective assistance claim . . . to address both components of the inquiry if the defendant makes

an insufficient showing on one." Strickland, 466 U.S. at 697.

Petitioner's ineffective assistance of counsel claim is "based on counsel's failure to pursue an intoxication defense and his advice to accept a plea that requires full intent." Brief in Support of Petition for Writ of Habeas Corpus ("Pet. Brief"), at 12. According to petitioner, "[t]he intoxication defense, the defendant's only viable defense, would have highlighted the burden the people faced with trying to convict with a crime embracing intent and potentially compelled the people to offer a plea of reckless manslaughter." Id. at 15. Thus, petitioner alleges that he was prejudiced as a result of counsel's failures because full investigation and implementation of the intoxication defense (1) "would have opened the door for a more fitting plea as to the reckless element" and (2) petitioner "might" have exercised his right to trial. Pet. Brief at 9.

Petitioner's primary argument under *Strickland*'s first prong is that counsel was deficient because he failed to pursue an intoxication defense. Contrary to petitioner's assertion, the record demonstrates that counsel did indeed pursue this defense. During pretrial hearings, defense counsel questioned a civilian and a police witness regarding whether petitioner was intoxicated at the time of the incident. See Exh. I, annexed Pre-Trial Hearing transcripts, at 13, 38, 41. Additionally, petitioner's counsel outlined his intoxication defense in his opening statement at trial:

> Now, unfortunately what – what happened here is alcohol. One thing as a society we probably know is that alcohol and instruments that are deadly don't mix. If you have somebody who's intoxicated and he gets in a car and his best friend is his passenger and that car slides off the road and the passenger is killed, that's a homicide, it's not an intentional homicide, but alcohol and instruments, deadly instruments don't mix. If someone has a gun, whether it be a rifle while he's hunting or a handgun in a bar or anywhere else and he's drunk, he mistakenly pulls the trigger and the gun is discharged and someone is killed –
> MR. FARRELL: Objection.
> THE COURT: Overruled.

-22-

–that is a homicide.  But it's not a murder.  It wasn't the intent of the drunk
person to kill anybody.  It was recklessness . . .

. . .

. . . [Petitioner] gets to the end of the porch, jumps down on the sidewalk, turns
around, stupidly with this dagger in his hand which he shouldn't have had and he
certainly shouldn't have been carrying it around when he's intoxicated, he swings
around and in an action that takes a second or a fraction of a second, as he's
turning around, Ismael who's also intoxicated, aggravated, spewing obscenities at
him, lunges at him and as he's turning around, that dagger went across the
abdomen into the abdomen.  It's not what Dalvin wanted to happen.  Is he
responsible?  Yes.  Was he reckless?  Yes.  Was he negligent?  Yes.  But did he
intend to kill this man, his friend, the stepfather of his best friend?  Absolutely
not.  And if he didn't intend to kill him, this is not an intentional murder, and
that's what you have to decide at the end of this case.

Exh. N, annexed trial transcript, at 21, 25.  Finally, prior to petitioner's plea allocution, the trial

court stated:  "Well, based upon the representations and the Court's knowledge of this case

through the pretrial hearings, it seemed to be that alcohol was a substantial factor and there was

alcohol abuse in this situation, which would make murky the defendant's intent to kill his – one

of his friends."  Exh. A at A18.

Petitioner seems to argue, however, that the proffered intoxication defense was

unpersuasive absent expert testimony on the issue of whether petitioner's ingestion of anti-

psychotic medications combined with alcohol could negate the element of intent.  See Pet. Brief

at B.  Petitioner, therefore, maintains that defense counsel's performance was deficient because

he did not develop the intoxication defense to the fullest possible extent.  Respondent notes that,

prior to jury selection, defense counsel stated that he may call an expert witness with respect to

"either the medical or some other issues."  Exh. I, annexed Pre-Trial Hearing transcripts, at 4.

Defense counsel's strategy was unclear, however, given his vague representation as to the nature

of the expert's testimony.

Nevertheless, the Court need not decide whether counsel's performance was objectively reasonable because petitioner fails to demonstrate the requisite prejudice. Petitioner alleges that, if counsel had pursued an intoxication defense, then the prosecution may have offered a plea to reckless, rather than intentional, manslaughter. Petitioner's assertion that the prosecution *may* have offered a more favorable plea deal is purely speculative. "[A] defendant has no right to be offered a plea, and there is no indication that the government would have offered, or even assented to, an alternative plea, including the one Petitioner now suggests." Sinclair v. United States, No. 12-CV-3344, 2013 WL 3716898, at *4 (S.D.N.Y. July 16, 2013) (internal quotation marks and citation omitted). Petitioner also states that he *might* have gone to trial had counsel fully developed the intoxication defense. Petitioner's vague assertion fails to satisfy his burden of demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. Because petitioner fails to demonstrate the requisite prejudice, his ineffective assistance of counsel claim must be denied.


## IV. CONCLUSION

For the reasons set forth above, I conclude—and respectfully recommend that Your Honor should conclude—that the instant petition for a writ of habeas corpus should be denied in its entirety. Further, because reasonable jurists would not find it debatable that petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I

recommend that no certificate of appealability be issued.  See 28 U.S.C. § 2253(c); Slack v.

McDaniel, 529 U.S. 473, 483–84 (2000).

Dated:   February 26, 2014
          White Plains, New York

Respectfully submitted,

_____
Paul E. Davison, U.S.M.J.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total

of seventeen (17) days, from service of this Report and Recommendation to serve and file

written objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections, if any, along with

any responses to the objections, shall be filed with the Clerk of the Court with extra copies

delivered to the chambers of the Hon. Nelson Stephen Román , at the Hon. Charles L. Brieant,

Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New

York 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered.  See Caidor v. Onondaga County,

517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to Judge Román.

A copy of this Report and Recommendation has been mailed to:

Dalvin Beltran
09-A-3759
Washington Correctional Facility
72 Lock Eleven Lane
P.O. Box 1245
Comstock, N.Y. 12821